**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RICHARD DUBOIS<br>SHELIA DUBOIS,<br>Plaintiffs | :<br>:<br>:<br>:<br>: |
| v. | :<br>: |
| MARITIMO OFFSHORE PTY LTD.,<br>MARITIMO USA,<br>EDWIN FAIRBANKS, and<br>FAIRBANKS YACHT GROUP, LLC<br>Defendants | :<br>:<br>:<br>:<br>:  JULY 21, 2015 |

**COMPLAINT FOR DAMAGES**
**(Jury Trial Demanded)**

Plaintiffs, Richard and Sheila DuBois (the "Plaintiffs), by and through the undersigned counsel, hereby file this Complaint for Damages against Defendants, Maritimo Offshore Pty Ltd., Maritimo USA, Edwin Fairbanks, and Fairbanks Yacht Group, LLC (the "Defendants"), and would state as follows:

**PARTIES, JURISDICTION and VENUE**

1. Plaintiffs are Connecticut residents residing at 265 Country Lane, Bristol CT 06010, and are the owners of "GAME CHANGER", a 2013 Maritimo 44 foot 3 inch motor yacht with hull identification number OEOM4305I213 and U.S. Coast Guard documentation Official Number 1250858 (hereinafter, the "Vessel").

2. Defendant Maritimo Offshore Pty Ltd., whose principal place of business is 1866 Ottawa Beach Road, Suite M, Holland, MI 49424 is in the business of selling and servicing high end motor yachts manufactured by Maritimo Offshore, 15 Waterway Drive Coomera, 4209, Queensland, Australia.

1

3. Defendant Maritimo USA, whose principal place of business is 1866 Ottawa Beach Road, Suite M, Holland, MI 49424 is in the business of selling and servicing high end motor yachts manufactured by Maritimo Offshore, 15 Waterway Drive Coomera, 4209, Queensland, Australia.

4. Defendant Edwin Fairbanks is a resident of 140 Ferry Road, Old Saybrook, CT 06475 and a yacht broker.

5. Defendant Fairbanks Yacht Group, LLC, is in the business of brokering yachts and other vessels, its principal place of business is 244 Maple Avenue, Old Saybrook, CT 06475. Defendant Edwin Fairbanks is the president of Defendant Fairbanks Yacht Group, LLC.

6. Jurisdiction lies within this Court pursuant to 28 USC §1332, as the parties are citizens of different states and countries and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest, attorney fees and costs.  Jurisdiction also lies within this Court pursuant to the federal Magnuson-Moss Warranty Act, 28 U.S.C. §2310(d)(1)(B).

7. Venue in this district is appropriate pursuant to 28 U.S.C. §1391(b) as the acts giving rise to this Complaint took place in the District of Connecticut.

8. Defendant Maritimo Offshore Pty Ltd, and Defendant Maritimo USA are subject to the personal jurisdiction of this Court as entities operating, conducting, engaging in or carrying on a business venture in the state of Connecticut or having an office or agent in Connecticut or otherwise:

    a. Committing a tortious act and other negligent conduct within this state as hereinafter described;

2

    b. Engaging in substantial and not isolated activity within this state including but not limited to marketing, distributing, selling, motor yachts and vessels destined for and sold in the State of Connecticut;

    c. Engaging in solicitation, advertising, marketing or service activities within this state;

    d. Producing materials, or things processed, serviced, or manufactured used or consumed within this state in the ordinary course of commerce, trade, or use;

    e. Entering into contracts with and issuing product warranties in this state;

    f. Entering into contracts with and performing work, including warranty, pursuant to contracts in this state;

    g. Breaching a contract in this state by failing to perform acts or negligently performing acts required by the contract to be performed in this state; and

    h. Such other and further acts and omissions to be discovered.

## GENERAL BACKGROUND

9. In September of 2013, the Plaintiffs viewed Maritimo Offshore's website to locate a local dealer to explore the purchase of a vessel manufactured by Maritimo Offshore,15 Waterway Drive, Coomera, 4209, Queensland, Australia.

10. The Plaintiffs investigation led them to Defendant Fairbanks Yacht Group, LLC and Plaintiffs called Defendant Fairbanks Yacht Group, LLC and spoke to Defendant Edwin Fairbanks who represented to the Plaintiffs that he was a dealer for Maritimo Offshore vessels and he had a new 2013 C43 2013 Maritimo

44 foot 3 inch motor yacht with hull identification number OEOM4305I213 (the "Vessel") for sale in stock.

11. The Plaintiffs scheduled a meeting with Defendant Edwin Fairbanks to view the Vessel.

12. The Plaintiffs took the Vessel for a sea trial and decided to place a deposit for the purchase of the Vessel which was contingent upon the Plaintiffs obtaining financing.

13. The Plaintiffs called David Northrop, President of Maritimo USA to determine if Defendant Edwin Fairbanks and Defendant Fairbanks Yacht Group, LLC were dealers for Maritimo Offshore.

14. David Northrop, represented to the Plaintiffs that Defendant Edwin Fairbanks and Defendant Fairbanks Yacht Group, LLC, were dealers and agents of Maritimo Offshore's vessels and that Defendant Maritimo Offshore Pty Ltd., and Defendant Maritimo USA were dealers and agents for Maritimo Australia. David Northrop represented to the Plaintiffs that all future warranty, service and/or repairs for a Maritimo Offshore Vessel they purchased would be fully covered and expertly performed by Defendant Maritimo Offshore Pty Ltd., and/or Defendant Maritimo USA.

15. Defendant Edwin Fairbanks represented to the Plaintiffs that he was a Maritimo Offshore dealer and that any future warranty, service and/or repairs would be fully covered and expertly performed by Defendant Maritimo Offshore Pty Ltd., and/or Defendant Maritimo USA.

16. As a result of the representations of David Northrop and Defendant Edwin Fairbanks, on or about November 23, 2013, Plaintiffs entered into a sales contract with the Defendant Maritimo Offshore Pty Ltd., and Defendant Maritimo USA for the purchase of the Vessel; a copy of said sales contracts are attached hereto as **Exhibit A**.

17. The purchase price of the Vessel was $649,900.00.  Defendant Maritimo USA accepted as a partial payment a trade-in of a 2011 Sea Ray Sundancer owned by Plaintiffs in the amount of $250,000.00.

18.  Plaintiffs entered into a financing agreement with Tommark Inc. whereby Plaintiffs borrowed $385,100.00 at 4.375% interest, which amount was secured by the Vessel.

19. Further, prior to purchase of the Vessel, Defendant Maritimo Offshore Pty Ltd., Defendant Maritimo USA, Defendant Edwin Fairbanks and Defendant Fairbanks Yacht Group, LLC, made representations to Plaintiffs, and Plaintiffs relied on such representations, as to the standards of constructions and quality workmanship for the Vessel, including but not limited to:

    a. ***DEFENDANT C43. MORE A TOTAL LIFESTYLE THAN A BOAT -*** *Sophistication, style, performance and above all space and livability in the all new Defendant C43 truly sets this amazing vessel apart in the sports cruiser market. The vessel has evolved through an exhaustive research and development process which saw every element of its design, layout and finish reviewed time and time again to ensure the optimum outcome.*

    b. Defendants representations as a member of the American Boat and Yacht Council ("ABYC") that the Vessel was constructed in accordance to and fully compliant with the ABYC, which sets forth specific standards and quality measures for the construction of yachts by member manufacturers.

    c. Defendants included a "Maritimo Factory Limited Warranty", per **Exhibit A.**

20. It was both an express and implied condition of the contract for sale that the Vessel was (i) fit for recreational vessel cruising, (ii) that its performance would be satisfactory for this purpose, (iii) that it would in all circumstances be safe and seaworthy, and (iv) that it would meet the standards set forth by the ABYC as well as other federal requirements for vessel manufacturers in the U.S.A., including those set forth by the U.S. Coast Guard and the National Fire Protection Association.

21. It was also an express and implied condition that the Vessel and all of its systems were of a high degree quality in terms of their mechanics and functions.

22. On or about November 8, 2013, title to the Vessel was conveyed from Defendant Maritimo Offshore Pty Ltd., and Defendant Maritimo USA to Plaintiffs; a copy of the Builder's Certification and Manufacturer's Statement of Origin are attached hereto as **Exhibit B**.  Due to the impeding winter, possession of the Vessel was not transferred to the Plaintiffs until the spring of 2014.

23. On or about April 25, 2014, the Vessel was delivered to Plaintiffs with multiple defects, and further, the Vessel sustained damage as a result of such defects

upon its first operation. The Vessel defects and failures were directly attributable to Defendants, and resulted in the Vessel taking on water while underway, making the Vessel unseaworthy and dangerous, and placing the Plaintiffs and other individuals on board the Vessel in immediate danger as the Vessel was sinking in frigid waters.  The Vessel defects attributable to the Defendants included, but were not limited to:

    a. Compromised hoses and exhaust systems;

    b. High water alarm system deactivated;

    c. Bilge pumps system deactivated;

    d. Electrical system problems; and

    e. Improper bottom prepping and finishing.

24. On or about September 25, 2014, a Condition Survey was performed on the Vessel, which concluded that the Vessel did not meet the minimum standards and recommendations as promulgated by the ABYC, the United States Coast Guard as implemented via the Code of Federal Regulations (CFR), and the National Fire Protection Association (collectively, the "Minimum Standards").

25. Plaintiffs have made repeated demand upon the Defendants to rectify the Vessel defects in order to meet the Minimum Standards and repair all damage sustained to the Vessel upon delivery to Plaintiffs, and even despite text messages from the President of Defendant Maritimo Offshore Pty Ltd., to Plaintiffs that "rest assured all is good," the Defendants have refused to make repairs or address the defects and conditions noted above.

26. The Vessel was manufactured, sold and delivered to Plaintiffs in an unsafe and unseaworthy condition and failed to meet the Minimum Standards.

27. The Vessel should have never been sold to Plaintiffs, and Plaintiffs seeks to be placed in the position Plaintiffs would have been had the Defendants never misrepresented material facts to Plaintiffs and induced Plaintiffs into thinking that they were purchasing a yacht that was safe and seaworthy, met the Minimum Standards, and was suitable for its intended purpose.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

28. Plaintiffs re-aver and re-allege all of the allegations set forth in paragraphs 1 – 27 above, as if fully set forth herein.

29. On or about November 23, 2013, Plaintiffs entered into a sales contract with Defendants for the purchase of the Vessel as a new vessel (hereinafter the "Contract").

30. Plaintiffs fully complied with all terms and conditions of the Contract.

31. The Defendants breached the Contract by failing to deliver the Vessel in a safe and seaworthy condition, and further, by manufacturing and delivering the Vessel which did not meet the Minimum Standards.

32. As a direct and proximate result of the Defendants breach of the Contract, Plaintiffs have suffered and continue to suffer substantial damages, including but not limited to, repair costs associated with the Vessel, the diminution of value of the Vessel, the loss of use of the Vessel, the costs of docking and

storage for the Vessel, interest on the loan on the Vessel, and costs and attorney fees.

## COUNT II – RESCISSION OF CONTRACT

33. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1- 32 above, as if fully set forth herein.

34. Plaintiffs were fraudulently induced to enter into the Contract with Defendants by means of Defendants numerous representations concerning the Vessel's construction, quality, safety, all in accordance with the Minimum Standards.

35. A substantial amount of the material representations by Defendants were false, and had Plaintiffs known of the falsity of the representations, Plaintiffs would not have entered into the Contract.

36. Accordingly, Plaintiffs ask that the Contract be rescinded, and all money be returned to Plaintiffs.

37. Additionally, Plaintiffs seek recovery of the consequential damages to be proven at trial.

## COUNT III: FRAUD

38. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1- 37 above, as if fully set forth herein.

39. Defendants made numerous misrepresentations to Plaintiffs that the Vessel was of high quality construction and met or exceeded the Minimum Standards.

40. Defendants representations were false at the time they were made, and Defendants knew them to be false.

41. In making the misrepresentations, the Defendants intended that Plaintiffs would rely on the truth of the representations, and Plaintiffs did in fact rely on the misrepresentations in choosing and purchasing the Vessel.

42. As a direct and proximate result of Defendants fraud, Plaintiffs have suffered and continue to suffer substantial damages, including but not limited to, repair costs associated with the Vessel, the diminution of value of the Vessel, the loss of use of the Vessel, the costs of docking and storage for the Vessel, interest on the loan on the Vessel, and costs and attorney fees.

43. Defendants conduct was willful, deceptive, unscrupulous, and fraudulent, and as a result, Plaintiffs should be awarded punitive damages.

## COUNT IV: NEGLIGENT MISREPRESENTATION

44. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1- 43 above, as if fully set forth herein.

45. The Defendants negligently misrepresented the condition, quality and construction of the Vessel.

46. In the exercise of reasonable care, Defendants would have or should have known that the Vessel did not meet the Minimum Standards, was not safe and seaworthy, and was not suitable for its intended purpose.

47. Defendants' misrepresentations were made with the intent of inducing reliance thereon, and Plaintiffs justifiably relied on such misrepresentations.

48. As a result of the misrepresentations by Defendants, the Plaintiffs have suffered and continue to suffer substantial damages, including but not limited to, repair costs associated with the Vessel, the diminution of value of the Vessel, the loss

of use of the Vessel, the costs of docking and storage for the Vessel, interest on the loan on the Vessel, and costs and attorney fees.

## COUNT V: NEGLIGENCE

49. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1 - 48 above, as if fully set forth herein.

50. Defendants owed a duty to Plaintiffs to construct the Vessel using a reasonable standard of workmanship such that the finished product would be free from material and substantial defects.

51. As the manufacturers and sellers of the Vessel for use by Plaintiffs, Defendants acts and/or omissions breached the duty of care owed to Plaintiffs.

52. As a direct result of the breach of this duty, Plaintiffs have suffered and continue to suffer substantial damages, including but not limited to, repair costs associated with the Vessel, the diminution of value of the Vessel, the loss of use of the Vessel, the costs of docking and storage for the Vessel, and interest on the loan on the Vessel.

## COUNT VI: BREACH OF EXPRESS WARRANTY PURSUANT TO THE MAGNUSON-MOSS ACT, 15 U.S.C. §§2301, et. seq.

53. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1 - 52 above, as if fully set forth herein.

54. Defendants made an express written warranty regarding the workmanship and materials used in constructing the Vessel.

55. The Vessel was delivered to Plaintiffs in such a defective condition that it was not seaworthy, it was not safe, and it was not fit for its intended use.

56. Plaintiffs timely brought the Vessel's defective conditions to the attention of Defendants.

57. Defendants failed to comply with the terms of its written warranty by failing to address, remedy, respond to, and repair the defects identified by Plaintiffs both at and after delivery of the Vessel to Plaintiffs.

58. As a result of Defendant's failure to comply with the terms of its express written warranty, Plaintiffs were damaged by having to spend additional money and time to repair the defective conditions of the Vessel.

59. Plaintiffs further allege that as a result of Defendants failure to comply with the terms of the written warranty, the Vessel continues to be defective and substandard such that it cannot be used for its intended purpose.

### COUNT VII: BREACH OF IMPLIED WARRANTIES PURSUANT TO THE MAGNUSON-MOSS ACT 15 U.S.C. §§2301, et. seq.

60. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1- 59 above, as if fully set forth herein.

61. Every sale of consumer goods that are sold at retail in Connecticut must be accompanied by the manufacturers and retail seller's implied warranty that the goods are merchantable.

62. Moreover, every sale of consumer goods that are sold at retail in Connecticut by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such manufacturer's implied warranty of fitness.

63. Defendants, as the manufacturer and retail seller of the Vessel sold to the Plaintiffs in Connecticut, impliedly warranted that the Vessel was merchantable.

64. Further, Defendants knew that Plaintiffs required a yacht that was suitable for pleasure cruising and that Plaintiffs were relying on the skill and judgment of Defendants to furnish a yacht that was suitable for the express purpose.

65. In direct breach of its implied warranties, Defendants delivered to Plaintiffs the defective Vessel, which was not merchantable or suitable for its express purpose.

66. As a proximate result of Defendants breach of its implied warranties, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $75,000.00.

## COUNT VIII: BREACH OF EXPRESS WARRANTY

67. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1 - 66 above, as if fully set forth herein.

68. On or about November 23, 2013, Plaintiffs entered into a sales contract with Defendants for the purchase of the Vessel (hereinafter the "Contract").

69. Upon information and belief, pursuant to the Defendants representations and warranty on the new Vessel, Defendants were required to (a) manufacture a yacht free from defects in workmanship and material and (b) repair, replace or adjust any such defects.

70. From the time that Plaintiffs acquired the Vessel, the numerous problems, defects, and deficiencies have been documented.

71. Plaintiffs have sent numerous correspondences and had numerous conversations with representatives of Defendants, thereby placing it on notice of the issues and requesting that Defendants remedy these issues.

72. Despite repeated demands by Plaintiffs, Defendants failed to adequately repair, replace or adjust the numerous defects and deficiencies of the Vessel.

73. Defendants' failure to adequately repair, replace or adjust the numerous defects and deficiencies of the Vessel constitutes a breach of the warranty.

74. As a direct and proximate result of Defendants breach of warranty, Plaintiffs have suffered and continue to suffer substantial damages, including but not limited to, repair costs associated with the Vessel, the diminution of value of the Vessel, the loss of use of the Vessel, the costs of docking and storage for the Vessel, interest on the loan on the Vessel, and costs and attorney fees.

### COUNT IX: BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE (C.G.S. §42a-2-314 & §42a-2-315)

75. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1 - 74 above, as if fully set forth herein.

76. Every sale of consumer goods that are sold at retail in Connecticut must be accompanied by the manufacturers and retail seller's implied warranty that the goods are merchantable.

77. Moreover, every sale of consumer goods that are sold at retail in Connecticut by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the

manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such manufacturer's implied warranty of fitness.

78. Defendants, as the manufacturer and retail seller of the Vessel sold to the Plaintiffs in Connecticut, impliedly warranted that the Vessel was merchantable.

79. Further, Defendants knew that Plaintiffs required a yacht that was suitable for pleasure cruising and that Plaintiffs were relying on the skill and judgment of Defendants to furnish a yacht that was suitable for the express purpose.

80. In direct breach of its implied warranties, Defendants delivered to Plaintiffs the defective Vessel, which was not merchantable or suitable for its express purpose.

81. As a proximate result of Defendant's breach of its implied warranties, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $75,000.

## COUNT X: CONNECTICUT UNFAIR TRADE PRACTICES

82. Plaintiffs re-allege and re-aver all of the allegations set forth in paragraphs 1- 81 above, as if fully set forth herein.

83. The fraud committed by Defendants in their misrepresentations to Plaintiffs constitutes a deceptive act or practice within the meaning of C.G.S. §42-110b(a) in the conduct of trade or commerce in that, said conduct constitutes a material misrepresentation likely to mislead a consumer acting reasonably under the circumstances.

84. Given Defendants violation of C.G.S. §42-110b(a), Plaintiffs should be awarded punitive damages, and attorney fees and costs.

## **JURY DEMAND**

Plaintiffs demand trial by jury as to all claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and the following relief:

1. Damages;

2. Actual damages pursuant to C.G.S. §42-110g(a);

3. Punitive damages;

4. Punitive damages pursuant to C.G.S. §42-110g(a);

5. Reasonable attorney's fees and costs;

6. Reasonable attorney's fees and costs pursuant to C.G.S. §42-110g(d);

7. Interest;

8. Rescission of the contract and consequential damages; and

9. Such other legal or equitable relief that the Court may deem appropriate.

        THE PLAINTIFFS
        RICHARD DUBOIS
        SHELIA DUBOIS

        BY:/s/ K. Wynne Bohonnon
        K. Wynne Bohonnon (Fed. Bar No. 05805)
        Bohonnon Law Firm, LLC
        195 Church Street
        New Haven, CT 06510
        (203) 787-2151
        Fax No. (203) 773-1427
        Email: wynne@bohonnon.com