UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------------------X

RICHARD & SHELIA DUBOIS, MICHAEL FLORS,

Plaintiffs,                          Case No.:  3:15-cv-01114-JAM

vs.

MARITIMO OFFSHORE PTY. LTD., MARITIMO USA,      **FIRST CROSS-CLAIMS**
EDWIN FAIRBANKS & FAIRBANKS YACHT              **AGAINST THE**
GROUP, LLC,                                    **FAIRBANKS DEFENDANTS**

Defendants.

-------------------------------------------------------------------X

Defendant Maritimo Offshore PTY. LTD. ("Maritimo Offshore PTY. LTD." or

"Maritimo Offshore"), complaining of the defendants EDWIN R. FAIRBANKS and

FAIRBANKS YACHT GROUP, LLC ("collectively referred to as Fairbanks") asserts the

following cross claims ("Cross Claims"):

## PRELIMINARY STATEMENT

1.     Maritimo Offshore PTY. LTD. is a limited proprietary company formed and

located in Queensland, Australia.

2.     Plaintiffs are Connecticut residents residing at 265 Country Lane, Bristol, CT

06010.  ("Plaintiffs").

3.     Plaintiffs purchased a Vessel they named "Game Changer" a 2013 Maritimo 44'

3" motor yacht with hull identification number OEOM4305I213 and U.S. Coast Guard

documentation official No. 1250858 ("Vessel").

4.     Plaintiff Michael Flors was added as an additional party Plaintiff in this

proceeding per the Court's Notice of an Order which granted Plaintiff's Motion for Leave to File

a Second Amended Complaint, and the Second Amended Complaint which named Michael Flors as an additional party plaintiff was deemed the operative complaint in this action.

5.     Michael Flors ("Flors") is the son of Plaintiff Shelia Dubois, the stepson and business partner of Richard Dubois, and a citizen of the state of Connecticut who resides in Connecticut.

6.     Flors along with the Dubois are owners of the Vessel.

7.     Fairbanks Yacht Group, LLC ("Fairbanks Yacht Group"), is a domestic limited liability company with a business address in various locations, including at 140 Ferry Road, Old Saybrook, CT  06475, the location of its principal place of business.

8.     Edwin R. Fairbanks ("Edwin Fairbanks") is a citizen of Connecticut and resides in Old Saybrook, CT 06475.

9.     Edwin Fairbanks is the founder of Fairbanks Yacht Group, and an owner, member, and a manager for sales and service.

10.     Fairbanks Yacht Group and Edwin Fairbanks are named as party Defendants in this proceeding by Plaintiffs (collectively referred to as "Fairbanks").

11.     Jurisdiction lies within this Court pursuant to:

a.     28 U.S.C. § 1332, as the parties are citizens of different states and citizens or subjects of a foreign state, and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest, attorneys' fees and costs; and

b.     28 U.S.C. § 1367, since the Cross Claims herein are so related to claims in the underlying action that they form part of the same case or controversy.

c.     Venue is this district is appropriate, pursuant to 28 U.S.C. § 1391(b), as the acts giving rise to the Cross Claims took place in the District of Connecticut.

     d.     Fairbanks are subject to the personal jurisdiction of this Court as Edwin Fairbanks resides in, and operates, conducts, and/or engages in business in the State of Connecticut, and Fairbanks Yacht Group carries on business and/or is registered in the State of Connecticut, with a principal place of business, office and agent in Connecticut, or otherwise.

12.     At all times relevant, Fairbanks Yacht Group is a company which sells Vessels from many different brands.

13.     Fairbanks Yacht Group is not owned, operated, and/or controlled by Maritimo Offshore PTY. LTD.

14.     At all times relevant, Edwin Fairbanks did not act as an agent, representative or dealer for, or on behalf of, Maritimo Offshore PTY. LTD.

15.     At all times relevant, Maritimo Offshore PTY. LTD., did not authorize Edwin Fairbanks to act as its agent, or representative, or dealer, nor did it authorize Fairbanks to represent to others that Fairbanks was Maritimo Offshore PTY. LTD.'s agent, representative or dealer.

16.     At all times relevant, Edwin Fairbanks is not an employee, representative and/or dealer of Maritimo Offshore PTY. LTD.

17.     At all times relevant, Fairbanks Yacht Group is neither a subsidiary, affiliate, nor an agent, representative or dealer of Maritimo Offshore PTY. LTD.

18.     At all times relevant, Fairbanks purchased vessels and other marine products from many brands for their own inventory to trade or sell to the end customer.

19.     At all times relevant, Fairbanks did not have a dealer and/or franchise agreement with Maritimo Offshore PTY. LTD.

20.     At all times relevant, Fairbanks was not a dedicated, non-exclusive or exclusive dealer for the sale and/or service of vessels made by Maritimo Offshore PTY. LTD.

21.     At all times relevant, Fairbanks was not a distributor, and never had a contract to be a distributor, dealer and/or to act as an agent or representative for Maritimo Offshore PTY. LTD.

22.     At all times relevant, Maritimo USA, who is named as a party Defendant in this proceeding is a separate company that was formed and at one time had a place of business in the state of Michigan.

23.     Maritimo USA dissolved in or about August 2015.

24.     At all times relevant, Maritimo USA was founded by David Northrop, who was the entity's owner and President.

25.     At all times relevant, David Northrop is not an agent or authorized representative of Maritimo Offshore PTY. LTD.

26.     At all times relevant, Maritimo USA is not an agent or authorized representative of Maritimo Offshore PTY. LTD.

27.     Plaintiffs commenced a cause of action against the named Defendants in July 2015 by filing an original Complaint, which was followed by the filing of an Amended Complaint, and the filing of a Second Amended Complaint.

28.     Plaintiff's claim damages were sustained to the vessel ("Vessel") they purchased on or about April 26, 2014 ("Incident").

29.     Plaintiffs alleged the Incident occurred when the Vessel flooded after it was launched on water as a result of "three (3) cut heating and A/C hoses in the Vessel which were discovered on April 26, 2014" after the Vessel was launched by Plaintiff Flors and Mark Mukon.

30.     Plaintiffs asserted several causes of action against all of the named Defendants for negligence; breach of warranty of workmanlike performance; breach of contract; and, for violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

31.     Plaintiffs asserted a second cause of action separately against Fairbanks for fraudulent representation.

32.     Plaintiffs also separately asserted causes of action for negligent misrepresentation; and for breach of express and implied warranties pursuant to Magnuson-Moss Act, against Maritimo Offshore PTY. LTD. and Maritimo USA.

33.     Plaintiffs met with Fairbanks when they became interested in purchasing a vessel in the year 2013.

34.     Fairbanks represented to Plaintiffs that he was an employee, agent and/or representative of Maritimo Offshore PTY. LTD.

35.     Fairbanks represented to Plaintiffs that he had a dealer and/or franchise agreement with Maritimo Offshore PTY. LTD.

36.     In reliance upon Fairbanks' representations, Plaintiffs purchased the Vessel in or about October 2013.

37.     Prior to purchasing the Vessel, Fairbanks and Mark Mukon, who was a captain of the Vessel, took the Vessel on a sea trial and found no problems with the Vessel.

38.     Before Plaintiffs made a deposit to purchase the Vessel, the Vessel was shipped to the U.S. by Maritimo and delivered to and docked at Fairbanks' Marina.  At the time that the Vessel was delivered and docked at Fairbanks' Marina, or a marina used by Fairbanks, Fairbanks experienced no problems or issues with the Vessel, and there were no defects and nothing wrong with the Vessel, and Maritimo received no complaints with the Vessel.

39.     At the time that Plaintiffs purchased the Vessel the Vessel was on display at Fairbanks Marina or a marina used by Fairbanks.

40.     After the purchase of the Vessel, one of more of the Plaintiffs and/or the captain, and Fairbanks launched the Vessel and delivered it to Hays Haven Marina in or about late November or early December 2013 with the heat on and experienced no problems with the Vessel.

41.     Before or after delivery of the Vessel to Hays Haven Marina by Fairbanks, Plaintiffs commissioned Fairbanks independently to perform winterization, installation of equipment options and perform other work on the Vessel, including the hull.

42.     Fairbanks agreed to perform the winterization, installation of certain equipment and perform other work on the Vessel, including, but not limited to, painting the hull on behalf of Plaintiffs.

43.     At Plaintiffs' request, Fairbanks began performing work on the Vessel related to its winterization, installation of components, add-ons or options, and painting of the hull.

44.     While performing work on the Vessel at Plaintiffs' request prior to the Incident, Fairbanks disconnected the hoses to the heating and air conditioning ("A/C") unit.

45.     Alternatively, while performing work on the Vessel at Plaintiffs' request, prior to the Incident, Fairbanks cut the hoses to the heating and A/C unit.

46.     Prior to the Incident, Fairbanks never reconnected the hoses to the heat and A/C unit on the Vessel.

47.     Prior to the Incident, Fairbanks never repaired the hoses to the heat and A/C unit he cut.

48.     While performing work on the Vessel, Fairbanks disconnected and/or deactivated the bilge pump to the Vessel.

49.     Prior to the Incident, Fairbanks never reactivated the bilge pump to the Vessel.

50.     Prior to the Incident, Fairbanks never notified Plaintiffs or Mark Mukon that the hoses to the heat and A/C unit had been disconnected.

51.     Alternatively, prior to the Incident, Fairbanks never notified Plaintiffs or Mark Mukon that the hoses to the heat and A/C unit had been cut.

52.     Prior to the Incident, Fairbanks never advised Plaintiffs and/or Mark Mukon to reconnect the hoses to the heat and A/C unit prior to Plaintiffs taking possession of the Vessel on or about the day of the Incident.

53.     Prior to the Incident, Fairbanks never advised Plaintiffs and/or Mark Mukon that he had deactivated the bilge pump prior to their taking possession of the Vessel on or about the day of the Incident.

54.     Alternatively, prior to the Incident, Fairbanks never warned the Plaintiffs and/or Mark Mukon that he had deactivated the bilge pump.

55.     Fairbanks represented that the winterization of the Vessel, installations, and other work Plaintiffs requested be conducted by Fairbanks would be performed by Fairbanks in a workmanlike manner. ¶ 39.

56.     Plaintiffs discovered Fairbanks failed to order equipment components and/or options and add-ons to be installed, and had not prepared the Vessel and the hull in an expert and workmanlike manner for launch. ¶ 41.

57.     Prior to the Incident, Plaintiffs complained to Fairbanks that Fairbanks failed to order and secure the components, and/or install equipment options, add-ons in a workmanlike manner.  Dkt. 73-1 p. 3, ¶ 38.

58.     Prior to the Incident, Plaintiffs' complained to Fairbanks that Fairbanks failed to paint the hull in a workmanlike manner.

59.     On or about April 9, 2014, Flors directed Fairbanks to cease taking any further actions including boarding the Vessel. ¶ 42.

60.     On April 10, 2014, Plaintiffs allege that Northrop represented Maritimo would take over and complete the installation of the equipment and components options on the Vessel.

61.     On April 24, 2014, Plaintiffs allege that John McCarthy contacted Flors to confirm a list of options Plaintiffs wanted installed. ¶¶ 45-47.

62.     On April 25, 2014, Plaintiffs allege they were informed that Maritimo "would install the equipment when the Vessel arrived at its permanent Marina". ¶ 48.

63.     Prior to the Incident, Plaintiffs complained that Fairbanks failed to perform the winterization of the Vessel as Plaintiffs requested.

64.     Plaintiffs refused to pay Fairbanks for the work which they complained was performed by Fairbanks in an unworkmanlike manner.

65.     Fairbanks refused to turn over possession of the Vessel and release it to Plaintiffs until he was paid for the work that Plaintiffs requested be performed.

66.     Given Plaintiffs had title to the Vessel, Plaintiffs threatened to contact the police and file a report in the event that Fairbanks did not turn over possession and release the Vessel to them.

67.    On April 26, 2014, Flors and Mark Mukon launched the Vessel at Hays Haven Marina and navigated the Vessel down the Connecticut River to its permanent marina, Frank Hall Boat Yard.

68.    Fairbanks failed to warn Flors and/or Mark Mukon prior to Flors' and Mark Mukon's launch of the Vessel on April 26, 2014, that the hoses to the heating and A/C unit had been disconnected and never reconnected.

69.    Alternatively, prior to Flors' and Mark Mukon's launch of the Vessel on April 26, 2014, Fairbanks never warned Flors and/or Mark Mukon that Fairbanks had cut the hoses to the heating and A/C unit on the Vessel.

70.    Prior to Flors and Mukon's launch of the Vessel on April 26, 2014, Fairbanks failed to warn Flors and/or Mark Mukon that if the hoses to the heating and A/C unit had been disconnected and/or cut, that launching the Vessel upon water would cause the Vessel to flood.

71.    While "underway, the Vessel unexpectedly began to take on water and Flors discovered the engine compartment was flooded in excess of fifteen (15) inches".  Plaintiffs' Sec Am. Compl. ¶ 51 (all and any references to para. numbers are to quoted allegations in Plaintiffs Second Amended Complaint and/or to unquoted summarization of Plaintiffs allegations).

72.    Plaintiffs allege that Flors put into Saybrook Point Inn Marina.  ¶ 52.

73.    Plaintiffs allege that at Saybrook Point, Flors discovered "the cause of the flooding was three (3) hoses to the heating and air conditioning unit which were deliberately cut and left unconnected when the Vessel was stored rendering the Vessel unseaworthy." ¶ 53.

74.    The hoses to the heat and A/C on the Vessel were not cut prior to storage under the custody and control of Fairbanks

75.     The hoses to the heating and A/C unit were cut by Fairbanks prior to the Incident while Fairbanks performed winterization work and installation of the equipment and components options in preparation for delivery to Plaintiffs.

76.     The hoses to the heating and A/C units were disconnected by Fairbanks prior to the Incident, during the time the Vessel was in storage under the custody and control of Fairbanks when the equipment and components were being installed by Fairbanks and prepared for delivery to the Plaintiffs.

77.     Plaintiffs allege that on April 30, 2014, Flors advised Fairbanks that the cut hoses and damages were the result of his breach of duty and obligation to store, prepare and deliver the Vessel for launch in a workmanlike manner. ¶ 60.

78.     The warranty provided by Maritimo contained specific exclusions.

79.     The use of any non-Maritimo components is a specific exclusion from the warranty.

80.     The creation of a defect or damage to any Maritimo components which is directly or indirectly caused or exacerbated by the Vessel being modified or operated outside the Vessel's original designs specifications is a specific exclusion from the warranty.

81.     Failure to routinely maintain and/or use the Vessel in accordance with the specifications for the Vessel is a specific exclusion from the warranty.

82.     The Vessel being subjected to misuse, abuse, negligence, unreasonable use, accident, vandalism or improper mooring/docking is a specific exclusion from the warranty.

83.     Installation of Maritimo components or non-Maritimo components in the Vessel by any person other than Maritimo Offshore PTY. LTD. is a specific exclusion from the warranty.

84.     The use of non-Maritimo components other than those installed by Maritimo Offshore PTY. LTD. is a specific exclusion from the warranty.

85.     Failure to take all reasonable steps available to the purchaser to mitigate the effect of any damage caused as a result of a defect in any component of the Vessel (whether or not a Maritimo Offshore PTY. LTD. component) whether by the purchaser or by any other person is a specific exclusion from the warranty.

86.     Maritimo Offshore PTY. LTD. could not honor the warranty to the Vessel since the Incident and the resulting damages were caused by Fairbanks' work on the Vessel which fell under one or more of the specific exclusions from the warranty, when Fairbanks, or someone under their control, cut, and/or disconnected and failed to reconnect, the hoses to the heat and A/C unit which caused the Vessel to flood, and which negated any warranty.

87.     Any defects and/or damages caused and/or created by Fairbanks' work on the Vessel, when Fairbanks, or someone under their control, cut and/or disconnected and failed to reconnect the hoses to the heat and A/C unit, which caused the Vessel to flood, and a specific exclusion under any warranty.

88.     Fairbanks failed to perform the installation and preparation work to the Vessel to comport with ordinary standards in the industry.

89.     Maritimo Offshore PTY. LTD. could not honor the warranty to the Vessel since the Incident and the resulting damages were caused by either Fairbanks, or someone under their control, who disconnected or deactivated the bilge pump, and failed to activate it prior to the Incident which caused the Vessel to flood and negated any warranty.

90.     Any defects and/or damages were caused and/or created by Fairbanks' work on the Vessel when Fairbanks, or someone under their control, deactivated and/or failed to activate the bilge pump to the Vessel, a specific exclusion of any warranty.

91.     The Incident resulted from the wrongful acts of Fairbanks, or by someone under their control, which caused Maritimo Offshore PTY. LTD. to be named as a Defendant and to incur costs to defend this proceeding.

92.     Upon information and belief, the Incident described in Plaintiffs' Second Amended Complaint and any damages sustained by Plaintiffs as a result of said Incident were caused solely by the negligence, negligent and/or fraudulent misrepresentations, breach of warranty of workmanlike performance, breach of contract, and violation of the CUTPA by Fairbanks and/or due to the carelessness and/or affirmative wrongdoing of Fairbanks as described herein, and/or as alleged in Plaintiffs' Second Amended Complaint without any fault on the part of Maritimo Offshore PTY. LTD.

93.     If Plaintiffs recover damages from Maritimo Offshore PTY. LTD. at trial, Maritimo Offshore PTY. LTD. will have been damaged and seeks, as and for its Cross Claim against Fairbanks, indemnification and/or contribution for any and all amounts which Maritimo Offshore PTY. LTD. may have to pay, together with the costs, expenses and disbursements incurred in defending this action.

## AS AND FOR MARITIMO'S FIRST CROSS CLAIMS
## AGAINST CO-DEFENDANT FAIRBANKS  FOR INDEMNIFICATION

94.     Maritimo Offshore PTY. LTD. repeats and realleges each and every allegation contained in Paragraphs 1 through 93 as though fully set forth herein.

95.     Plaintiffs allege that Defendants made certain misrepresentations and performed work in an unworkmanlike manner and thereby are liable to Plaintiffs under various legal

theories, including breach of contract, fraudulent and negligent misrepresentation, negligence, breach of warranty of workmanlike performance, and CUPTA.

96.     Maritimo Offshore PTY. LTD. denies it is liable as set forth in Plaintiffs' Second Amended Complaint.  However,  in the event  that Maritimo Offshore PTY. LTD. and Fairbanks are found to be liable, the damages were caused by Fairbanks' work at the time the Vessel was in Fairbanks custody and control during storage of the Vessel, as Fairbanks was commissioned by Plaintiffs to perform winterization, installation of equipment and/or component options and painting of the hull, the performance of which was in Fairbanks' exclusive control while the Vessel was in Fairbanks exclusive control, and Fairbanks' negligence alone, and performance of this work in an unworkmanlike manner, as alleged by Plaintiffs was the direct and immediate cause of the Incident, and any resulting damages and/or defects to the Vessel purchased by the Plaintiffs.

97.     Additionally, Maritimo Offshore PTY. LTD. was unaware of Fairbanks negligence and unworkmanlike performance, as well as the misrepresentations Fairbanks made to Plaintiffs, upon which Plaintiffs allegedly relied, and had no reason to anticipate same, and reasonably relied on Fairbanks not to make misrepresentations and/or not to commit negligence or perform work in an unworkmanlike manner.

98.     Based upon the allegations, Fairbanks will be liable to Maritimo Offshore PTY. LTD. for any damages assessed against Maritimo Offshore PTY. LTD. in this proceeding.

99.     Upon information and belief, the Incident was caused by Fairbanks' work which Plaintiffs separately and independently commissioned Fairbanks to perform, including but not limited to, the winterization, installation of equipment and/or component options and painting of the hull.

100.    Upon information and belief, the Incident was due to Fairbanks' disconnection of the hoses to the A/C and heating unit and failure to reconnect them properly while Fairbanks was performing work, and the failure to reconnect the hoses prior to the launching of the Vessel on April 26, 2014.

101.    Upon information and belief, the Incident was caused by Fairbanks' negligence in slicing and/or cutting the heat and A/C unit hoses that are alleged by Plaintiffs to have been cut which allowed water to enter the Vessel on April 26, 2014 when it was launched, and/or Fairbanks' failure to discover the sliced and/or cut hoses, and/or Fairbanks' failure to repair the sliced and/or cut hoses prior to turning the Vessel over to Plaintiffs on or about the day that Plaintiff Flors and the captain Michael Mukon launched the Vessel on April 26, 2014.

102.    Upon information and belief, the Incident was caused by Fairbanks turning off and/or deactivating the bilge pump, and failure to activate and/or turn the bilge pump back on, at the time Fairbanks performed work on the Vessel for Plaintiffs prior to the Incident which allowed water to enter the Vessel on April 26, 2014 when it was launched by Flors and Mark Mukon.

103.    Upon information and belief, the Incident was caused by Fairbanks' failure to warn Flors and/or Mark Mukon prior to the Incident on April 26, 2014 that he disconnected the heat and A/C unit hoses and failed to reconnect them.

104.    Upon information and belief, the Incident was caused by Fairbanks' failure to warn Flors and/or Mark Mukon prior to the Incident that Fairbanks had sliced and/or cut the hoses to the heat and A/C unit and failed to repair same.

105.    Upon information and belief, the Incident was caused by Fairbanks' failure to warn Flors and/or Mark Mukon prior to the Incident that Fairbanks had inactivated the bilge pump and failed to activate it or turn it back on.

106.    Upon information and belief, the Incident was caused by Fairbanks' creation of defects or damage to the Vessel caused by Fairbanks' faulty winterization and/or defective installation work, and/or faulty work on the hull, which is described by Plaintiffs as being performed in an unworkmanlike manner to the Vessel prior to the Incident, and failure to repair same.

107.    In the event that Maritimo Offshore PTY. LTD. is adjudged to be liable for any or all of the damages alleged in Plaintiffs' Second Amended Complaint, Maritimo Offshore PTY. LTD. is entitled to reimbursement and indemnification by the co-Defendant Fairbanks for all monetary and other damages, as the tortfeasor who is all or primarily responsible.

108.    In the event Maritimo Offshore PTY. LTD. is adjudged to be liable for any or all of the damages alleged in the Plaintiffs' Second Amended Complaint, Maritimo Offshore PTY. LTD. is entitled to reimbursement for all legal fees and costs incurred in connection with the defense of this matter.

## SECOND CROSS CLAIM FOR FAIRBANKS NEGLIGENT MISREPRESENTATIONS

109.    Maritimo Offshore PTY. LTD. repeats and realleges each and every allegation contained in Paragraphs 1 through 108 as though fully set forth herein.

110.    Plaintiffs' Second Amended Complaint contains many allegations of misrepresentations made by Fairbanks.

111.    Plaintiffs' assert a cause of action for fraudulent misrepresentations by Fairbanks and not against Maritimo.

112.    There are no misrepresentations that are alleged by Plaintiffs in Plaintiffs' Second Amended Complaint that are made by Maritimo Offshore PTY. LTD.

113.    Plaintiffs allege that Maritimo Offshore PTY. LTD. made negligent misrepresentations vis-à-vis either through Fairbanks and/or through Northrop.

114.    According to Plaintiffs' allegations, Fairbanks made misrepresentations and/or misstatements to Plaintiffs upon which Plaintiffs relied in purchasing the Vessel.

115.    Upon information and belief, Fairbanks made certain representations which are false which Plaintiffs allege they relied on in purchasing the Vessel.

116.    Upon information and belief, Fairbanks made misrepresentations to Plaintiffs that Fairbanks had a dealer and/or other franchise agreement with Maritimo Offshore PTY. LTD. for the sale of vessels.

117.    Upon information and belief, Fairbanks made certain misrepresentations to Plaintiffs upon which Plaintiffs relied that they were an exclusive dealer of Maritimo and were authorized to perform warranty work on the Vessel.

118.    Upon information and belief, Plaintiffs purchased the Vessel in reliance on the negligent and/or fraudulent misrepresentations made by Fairbanks to Plaintiffs that Fairbanks was an employee, agent and/or representative, and a dealer of Maritimo, all of which are false.

119.    Plaintiffs purchased the Vessel in reliance on Fairbanks' misrepresentations to Plaintiffs of the quality of his workmanship, and ability to perform the work in a workmanlike and timely manner.

120.    Upon information and belief, Fairbanks made misrepresentations and/or misstatements to Plaintiffs, including but not limited to, that he was authorized by Maritimo

Offshore PTY. LTD., upon which Plaintiffs relied in commissioning Fairbanks to perform winterization of the Vessel.

121.    Upon information and belief, in reliance upon Fairbanks' misrepresentations, Plaintiffs independently commissioned Fairbanks to perform certain work on the Vessel and/or install certain equipment and/or component options and paint the hull.

122.    In the alternative, Plaintiff commissioned Fairbanks for the work due to Fairbanks' misrepresentations that Fairbanks was an agent or employed by Maritimo Offshore PTY. LTD.

123.    Maritimo Offshore PTY. LTD. was unaware that Plaintiffs had commissioned Fairbanks to perform work and of Fairbanks' misrepresentations to Plaintiffs.

124.    In the alternative, Maritimo Offshore PTY. LTD.  relied upon Fairbanks' misrepresentations in allowing Fairbanks to perform the work on Plaintiff's Vessel.

125.    Some of the misrepresentations and or misstatements made to Plaintiffs by Fairbanks are contained within Plaintiffs' pleadings, including its Second Amended Complaint, as well as Fairbanks' Cross Claims and Fairbanks' Amended Cross Claims in this proceeding.

126.    Fairbanks misrepresented the nature and extent of any warranty to Plaintiffs upon which they relied in purchasing the Vessel.

127.    Fairbanks misrepresented to Plaintiffs any specific exclusions from the warranty related to the Vessel, and failed to warn Plaintiffs that Fairbanks' work could void the warranty.

128.    Alternatively, Fairbanks made misrepresentations to Maritimo Offshore PTY. LTD., to which Maritimo relied on in permitting Fairbanks to procure, arrange and/or originate a sale with Plaintiffs.

129.     Alternatively, Fairbanks made misrepresentations to Maritimo Offshore PTY. LTD., regarding their ability to fund the purchase of the Vessel from Maritimo to sell to Plaintiffs which resulted in a differing arrangement.

130.     Alternatively, Fairbanks made misrepresentations to Maritimo Offshore PTY. LTD., regarding their ability to perform any work or installation of components and/or add-ons to the Vessel for Plaintiffs in a workmanlike manner, and quality of same.

131.     Alternatively, Fairbanks made misrepresentations to Maritimo Offshore PTY. LTD., regarding their ability to sell Maritimo brand yachts.

132.     Alternatively, Fairbanks made misrepresentations to Plaintiffs that a Maritimo independent contractor and/or agent or representative of Maritimo, and not Fairbanks, would perform any add-ons, component installation and/or winterization work on the Vessel, although Fairbanks proceeded to perform such work without informing Plaintiffs.

133.     Alternatively, Maritimo Offshore PTY. LTD. did not authorize Fairbanks to perform any add-on, component installation and winterization work on the Vessel.

134.     Plaintiffs allege that as a result of the unworkmanlike performance by Fairbanks they demanded that Fairbanks cease any further activity on the Vessel and take no action to board the Vessel.

135.     Upon information and belief, as a result of Fairbanks unworkmanlike performance, Plaintiffs decided to take possession of the Vessel on April 26, 2014.

136.     Due to Fairbanks' negligent handling of the installation, winterization and/or painting of the hull, including the failure to give an independent contractor of Maritimo Offshore PTY. LTD. a chance or the opportunity to inspect Fairbanks' work and/or handle the warranty

and/or work left unperformed by Fairbanks, Plaintiffs seized the Vessel from Fairbanks on April 26, 2014 and when it was launched the Vessel flooded.

137.    Upon information and belief, as a result of the misrepresentations made by Fairbanks, Maritimo Offshore PTY. LTD. has been named as a Defendant in this action and is required to defend this proceeding.

138.    In light of the above, Maritimo Offshore PTY. LTD. asserts that Fairbanks will be liable to Maritimo Offshore PTY. LTD. for any damages assessed against them in this proceeding.

### THIRD CROSS CLAIM AGAINST
### CO-DEFENDANT FAIRBANKS FOR CONTRIBUTION

139.    Maritimo Offshore PTY. LTD. repeats and realleges each and every allegation contained in paragraphs 1 through 138 as though fully set forth herein.

140.    Maritimo Offshore PTY. LTD. denies that it is liable to the Plaintiffs for the acts and/or commissions complained, including the allegations by Plaintiffs against Fairbanks.  In the event Maritimo Offshore PTY. LTD. is found liable to the Plaintiffs, Maritimo Offshore PTY. LTD. asserts that Fairbanks should be held to be joint tortfeasors in connection with such loss.

141.    To the extent Maritimo Offshore PTY. LTD. is compelled to pay more than their pro rata share of damages to Plaintiffs, Maritimo Offshore PTY. LTD. is entitled to contribution from Fairbanks to the extent of any excess.

142.    In the event Maritimo Offshore PTY. LTD. is held liable to Plaintiffs in any amount, such liability would have been based in whole or in part upon the acts and/or omissions of Fairbanks and not of Maritimo Offshore PTY. LTD., and therefore, Fairbanks, as the parties who caused, augmented and/or contributed to the damages which caused and/or were incurred as a result of the Incident are liable to Maritimo Offshore PTY. LTD. by means of contribution.

WHEREFORE, Maritimo demands a judgment against Plaintiffs and of co-Defendants Fairbanks as follows:

        a.      Dismissing the Second Amended Complaint and each and every cause of action contained therein against Maritimo Offshore PTY. LTD.;

        b.      Dismissing Fairbanks' Amended Cross Claims;

        c.      Awarding Maritimo Offshore PTY. LTD. damages for Fairbanks' misrepresentations, and/or for indemnification and contribution;

        d.      Awarding Maritimo Offshore PTY. LTD. its costs, reasonable attorneys' fees and disbursements incurred in defending this action;

        e.      Awarding Maritimo Offshore PTY. LTD. such other and further relief as may be deemed just and proper; and

        f.      In the event Maritimo Offshore PTY. LTD. is liable to Plaintiffs, Maritimo Offshore PTY. LTD. is entitled to and demands judgment against co-defendants Fairbanks as follows:

                i.      On the First Cross Claim for Indemnification as against co-defendants Fairbanks in an amount to be determined at trial, plus interest, costs and disbursements, and attorneys' fees;

                ii.      On the Second Cross Claim for Negligent Misrepresentations as against co-Defendant Fairbanks in an amount to be determined at trial, plus interests, costs and disbursements and attorney's fees;

                iii.      On the Third Cross Claim for Contribution as against co-defendants Fairbanks in an amount to be determined at trial, plus interest, costs, disbursements, attorneys' fees and punitive damages; and

iv.    For such other and further relief as this Court deems, just, proper

and equitable.

Dated:   Mineola, New York
         September 30, 2016

BELLAVIA BLATT & CROSSETT, P.C.

By: _____
Carol A. Crossett, Esq. (phv 07860)
(Admitted Pro Hac Vice As a Visiting Attorney
For Purposes of this Litigation)
Francis Burke, Esq. (Local Counsel) (CT 18688)
Attorneys for Defendant
Maritimo Offshore PTY. LTD.
200 Old Country Road, Suite 400
Mineola, NY 11501
(516) 873-3000
(516) 873-9032 fax
lbellavia@dealerlaw.com
ccrossett@dealerlaw.com

TO:   For the Plaintiffs

      Bohonnon Law Firm, LLC
      195 Church Street
      New Haven, Connecticut 06510
      Attn: Wynne Bohonnon, Esq.

      For the Defendants
      Edwin Fairbanks
      Fairbanks Yacht Group, LLC

      Eliot B. Gersten (ct05213)
      Jonathan A. Kaplan (ct27126)
      Pullman & Comley, LLC
      90 State House Square
      Hartford, CT 06103
      Telephone: 860 424 4300
      Facsimile: 860 424 4370
      egerstein@pullcom.com
      jkaplan@pullcom.com

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was filed electronically on September 30,

2016, and served by mail on anyone unable to accept electronic filing through the Court system.

Notice of this filing will be sent by email to all Parties by operation of the Court's electronic

filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic filing with the Court.  Parties may access this filing through the Court CM/ECF

system.

Carol A. Crossett, Esq. (phv 07860)