# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD DUBOIS, SHEILA DUBOIS, and
MICHAEL FLORS,
    *Plaintiffs*,

    v.

MARITIMO OFFSHORE PTY LTD., *et al.*,
    *Defendants*.

No. 3:15-cv-01114 (JAM)

## ORDER RE PENDING MOTIONS

This is a case about a boat deal gone bad. The boat is a yacht built by an Australian company named Maritimo Offshore Pty Ltd. The buyers of the boat were arguably Richard Dubois, Sheila Dubois, and Capital Construction LLC, a company jointly owned by Richard Dubois and his adult son Michael Flors. The boat deal was brokered by Edwin Fairbanks and Fairbanks Yacht Group LLC.

After the sale was completed, disputes arose about the boat's alleged defects, failures to make requested upgrades and repairs, and further damage sustained to the boat after its purchase. Eventually, Richard Dubois, Sheila Dubois, and Michael Flors joined together to file this lawsuit against Maritimo Offshore Pty Ltd, Maritimo USA, Edwin Fairbanks, and Fairbanks Yacht Group LLC, alleging breach of contract, fraud, negligence, and related causes of action.

This case has been before the Court since 2015. Like the boat it concerns, it has taken on some water, as well as a considerable number of legal barnacles. During its pendency, Maritimo Offshore Pty Ltd sailed into and out of voluntary administration in Australia, a form of bankruptcy protection. Afterwards, two of the plaintiffs, Richard and Sheila Dubois, were thrown overboard for failure to actively litigate this action. Now only Flors remains at the helm, but

without an attorney to navigate for him and under a stormcloud of questions about whether he alone has standing to maintain this action.

The Court's current docket manifest stands as follows. First, the Court must determine if Flors has standing. Second, the Court must evaluate a trio of pending motions to dismiss filed by one or more of the defendants. Lastly, the Court must address a motion for attorney's fees stemming from Flors' failure to comply with discovery.

BACKGROUND

### A. The complaint

The second amended complaint, Doc. #73, alleges the following facts, which I accept as true for the purposes of these motions to dismiss. In 2013, Sheila Dubois, her husband Richard Dubois, and her son Michael Flors ("the Dubois-Flors") decided to buy a yacht. Doc. #73 at ¶ 16. Online research led them to defendant Maritimo Offshore Pty Ltd ("Maritimo Australia"). Doc. #73 at ¶ 3. According to its website, Maritimo Australia manufactures and sells "long range luxury yachts" of "the most superior quality." *Id.* at ¶ 18. Flors eventually expressed interest in a 44-foot 3-inch model that Maritimo Australia was offering and that would be named the "*Game Changer.*" *Id.* at ¶ 20. Flors also contacted defendant Edwin Fairbanks at the beginning of September 2013. Doc. #73 at ¶ 19. Fairbanks is a yacht broker who sells Maritimo boats in the United States, and he is the owner and operator of defendant Fairbanks Yacht Group LLC ("FYG"), a Connecticut company that outfits, repairs, and sells boats. Doc. #73 at ¶ 10.

The Dubois-Flors thereafter arranged to meet with Fairbanks, and on or about September 20, 2013, the Dubois-Flors and Fairbanks went on a sea trial of the boat. *Id.* at ¶ 21-22. That September, both before and after the sea trial, one or all of the Dubois-Flors informed Fairbanks that they would purchase the boat only if the boat was (1) fit for recreational boat cruising,

(2) performing its recreational cruising tasks "satisfactorily," (3) safe and seaworthy under any circumstances and (4) compliant with the standards set forth by the American Yacht & Boat Council (AYBC), applicable federal requirements for boat manufacturers as set forth by the U.S. Coast Guard, and the guidelines promulgated by the National Fire Protection Association, among others. *Id.* at ¶ 23.

The Dubois-Flors informed Fairbanks in September or October 2013 that they wanted to do business with a local authorized dealer and agent of Maritimo, qualified to install certain equipment and components, who would do finishing work on the boat, store the boat and deliver it for launch in spring 2014, and who would take responsibility for repairing, servicing, and performing other work on the boat under its warranty. *Id.* at ¶ 24. Fairbanks directed the Dubois-Flors to contact David Northrop, the president and general manager of Maritimo USA. *Id.* at ¶ 25. Northrop and Fairbanks together made representations that the boat would exceed the Dubois-Flors' expectations for quality and safety of construction, and that it would meet or exceed the standards set forth by organizations that regulate the manufacture and sale of boats in the United States. *Id.* at ¶ 27. Northrop and Fairbanks further represented to the Dubois-Flors that Fairbanks would install all the equipment included in the purchase of the boat "in a workmanlike manner" as an authorized dealer and agent of Maritimo Australia. *Id.* at ¶ 28. Fairbanks would receive a commission for the sale of the boat and for installing the equipment that came with the boat, as well as a commission for additional equipment purchased by the plaintiffs. *Id*. at ¶ 29.

On October 23, 2013, the first of two contracts for the purchase of the boat was signed. This first contract, entitled "Dealer Sales Agreement," lists the buyer of the boat as Capital Cable Construction LLC, Doc. #73-1 at 2, a Connecticut limited liability company co-owned by Flors

and Richard Dubois. Doc. #182 at 12, Doc. #182-1 at 2 (Connecticut Secretary of State filing).[1] The first and third pages of the contract are signed only by Richard Dubois and David Northrop, the former on behalf of Cable Construction Company LLC, the latter (it appears) on behalf of FYG. Doc. #73-1 at 2.

A second contract was executed on November 25, 2013, entitled "Sales Contract for New Boat." In this contract, the "buyer's name" was declared to be "Richard and Sheila Dubois," *id.* at 4, a designation repeated on the attached Builder's Certification that declared, in Section V, that Sheila Dubois and Richard Dubois were to be "tenants in common, each owning an equal undivided interest" in the boat. *Id.* at 9. The signatories on this contract are difficult to make out, but appear to include an officer of Maritimo Australia, Richard Dubois, and Sheila Dubois. *Id.* at 5. Garth Corbitt, the Chief Executive Officer of Maritimo Australia, signed the Builders Certification and First Transfer of Title, and the Manufacturer's Statement of Origin to a Boat or Motor. *Id.* at 8–10.

The November 2013 contract does not mention Capital Cable Construction or Flors. *Id.* It does, however, include in its terms and conditions a clause declaring that "Dealer makes no warranties, express or implied, including any warranties of merchantability, engine hours, or fitness for a particular purpose, regarding any boat or item purchased hereunder, whether new, used, or brokered. Any warranty, if any, associated with the item(s) purchased hereunder shall

---

[1] Although the operative complaint avers that "the plaintiffs" (i.e. Richard and Sheila Dubois as well as Flors) "entered into a sales contract to purchase the Boat," Doc. #73 at 8(¶ 30), that same paragraph incorporates an exhibit containing copies of the sales contracts at issue. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (noting that "[a] complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint"). Those contracts refer either to Richard and Sheila Dubois or to Capital Cable Construction LLC, not to Flors, the third plaintiff at the time of the operative complaint. I resolve this potential inconsistency by understanding paragraph 30 of the complaint to refer to the entities named in the contracts reproduced in the exhibit, rather than claiming that "the plaintiffs" were parties to the contracts in contravention of the plain face of the contracts themselves.

solely be the warranty given by the manufacturer." *Id.* at 7. Maritimo Australia declared in the November 2013 contract that it provided a "Factory Limited Warranty" whose "effective start date begins upon transfer to Title and ownership." *Id.* at 5.

Title to the boat transferred to Richard and Sheila Dubois when the November 2013 contracts were executed. Doc. #73 at ¶ 37; Doc. #73-1 at 5. However, there was work to be done on the boat until it could be practically put in the Dubois-Flors' possession—mostly the installation of equipment—and confusion about just who would be doing this work. The Dubois-Flors thought Maritimo Australia or Maritimo USA would finish the work on the boat; Maritimo Australia and Maritimo USA each said (before the boat was sold) that Fairbanks would do it and was qualified to do it, *see* Doc. #73 at ¶¶ 24, 25, 29, and that the work would be done by the spring. *Id.* at ¶¶ 29, 39. The Dubois-Flors expressed a clear expectation that the work would get done in time for a spring launch of the yacht.

It wasn't. In February 2014, Flors discovered that none of the requested equipment was installed; although Fairbanks promised to install the equipment immediately, nothing was done by April 2014, at which point Flors lost patience and directed Fairbanks to cease taking any further actions to equip or board the boat. *Id.* at ¶¶ 39-40, 42.

Flors' directive to Fairbanks triggered a series of demands, counter-demands, and acrid exchanges between the Dubois-Flors, Fairbanks, and various representatives of the Maritimo entities. At first, Northrop represented that Maritimo Australia would take charge of getting the boat ship-shape, *id.* at ¶¶ 44-45, but hopes of rapid resolution were dashed when Flors tried to navigate the *Game Changer* to Rhode Island to allow Maritimo Australia to perform the finishing work there, only to discover that the *Game Changer* was taking on significant quantities of water and had to be berthed at the nearest port for repairs in Old Saybrook,

Connecticut. *Id.* at ¶¶ 48–52. The source of the leak was traced to three hoses, ordinarily connected to the heating and air conditioning unit, which were somehow cut when the boat was in the possession of the Fairbanks defendants. *Id.* at ¶¶ 53–54. The leak represented only the most serious problem with the *Game Changer*, heading a list that included electrical problems, *id.* at ¶ 66, defective shafts, *id.* at ¶ 70, botched paint jobs on the hull, *id.* at ¶ 44, and much else besides, *id.* at ¶¶ 70-73.

Maritimo Australia refused to pay for repairs arising from the cut hoses, arguing that these were Fairbanks defendants' responsibility, *id.* at ¶ 68, and subsequently refused to do any work at all, claiming that the boat was a "demo" not covered under any warranty, *id.* at ¶ 73. Fairbanks and Maritimo Australia each rejected repeated demands by Flors made between August and October 2014 for either party to conduct the requested repairs, *id.* at ¶¶ 74-76, and the Dubois-Flors ultimately sued Maritimo Australia, Maritimo USA, FYG, and Edwin Fairbanks in this Court in July 2015. Doc. #1.

The complaint alleges eight counts: (1) breach of contract against all defendants, (2) fraudulent misrepresentation by Fairbanks, (3) negligent misrepresentation by Maritimo Australia and Maritimo USA, (4) breach of express and implied warranties by Maritimo Australia and Maritimo USA under state common law and the Magnuson-Moss Act, 15 U.S.C. § 2301, (5) negligence by Fairbanks, (6) negligence by Maritimo Australia and Maritimo USA, (7) breach of warranty by all defendants, and (8) violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a, *et seq.* by all defendants.

### B. *Subsequent developments*

Edwin Fairbanks and FYG (who I shall collectively refer to as "the Fairbanks defendants") filed a motion to dismiss the Dubois-Flors' complaint, Doc. #102, a motion still

pending before the Court. The Fairbanks defendants also filed cross-claims against Maritimo Australia in early 2016, Doc. #79 (initial cross-claim), #89 (amended cross-claim), which Maritimo Australia moved to dismiss, Doc. #95, which Fairbanks opposed, Doc. #103. Maritimo Australia also filed cross-claims against Fairbanks later that year. Doc. #126.

Before the motions to dismiss the main action or the cross-claims could be resolved in this Court, Maritimo Australia entered voluntary administration in Australia, a form of bankruptcy protection, under Australian law. Shortly after the voluntary administration commenced overseas, Maritimo Australia initiated a Chapter 15 proceeding in the U.S. Bankruptcy Court for the District of Connecticut. *In Re Maritimo Offshore Pty Ltd*, No. 16-bk-31613, Doc. #1 (Bankr. D. Conn.). Chapter 15 of the Bankruptcy Code provides the legal mechanisms for U.S. courts to recognize foreign insolvency proceedings. *See generally* 11 U.S.C. § 1501. Pursuant to the provisions of Chapter 15, Maritimo Australia asked the U.S. Bankruptcy Court to recognize the Australian voluntary proceeding as a "foreign main proceeding" under the Bankruptcy Code, a filing that triggered an automatic stay of the proceedings in this Court. Doc. #140. In January 2017, the Bankruptcy Court recognized the Australian voluntary administration as a foreign main proceeding, which continued to stay this case. *See* Doc. #142.

An Australian voluntary administration is an expedited procedure designed to allow for the speedy turnaround of an insolvent or near-insolvent company. *See generally In Re Maritimo Offshore Pty Ltd*, No. 16-bk-31613, Doc. #82 (Bankr. D. Conn.) (affidavit and materials of voluntary administrator in the Maritimo matter); *see also* Aust. Sec. & Inv. Comm'n. *Voluntary Administration: A Guide for Creditors* (Sept. 1, 2017), https://asic.gov.au/regulatory-resources/insolvency/insolvency-for-creditors/voluntary-administration-a-guide-for-creditors/. In

this voluntary administration, Maritimo Australia appointed two independent administrators (Andrew Cummins and Brian Silvia, of the specialist liquidation firm BRI Ferrier), who then held a meeting of creditors functionally approving their appointment. *See* Affidavit of Andrew John Cummins As Agent/Foreign Representative Concerning Voluntary Administration and Deed Administration and Adjudication of Proof of Claim as Amended, *In Re Maritimo Offshore Pty Ltd*, No. 16-bk-31613, Doc. #82 (Bankr. D. Conn.). After a period of investigation, the administrators ultimately presented the creditors with a Deed of Company Administration ("DOCA"). A DOCA is a plan, binding on all participating creditors, setting out how much creditors would be paid and the quasi-judicial procedure under which creditors' claims would be evaluated (the "DOCA Claims Process"). *Id*. The DOCA Claims Process required creditors to submit a proof of claim to the administrators, who would then adjudicate the claim and issue a preliminary decision. *Id*. That decision could be appealed to the Australian trial courts, which would then review the claim in much the same way a U.S. court would. *Id*.

The Dubois-Flors attended the creditor meeting that approved the DOCA (by proxy, through their Australian attorneys). *Id*. They then fully participated in the DOCA Claims Process, submitting a proof of claim, complete with 88 exhibits, to the appointed administrators of Maritimo Australia's bankruptcy estate. Maritimo Australia's administrators denied the Dubois-Flors' claim; the notice of claim denial explained that the administrators' decision could be appealed to the Australian courts, but no such appeal was made. *Id*. Having finally adjudicated all relevant claims under the DOCA claims process, the administrators held a final creditors meeting, which approved the final disposition of Maritimo Australia's assets and released the company back to the control of its original directors. *Id*. Maritimo Australia then sought and obtained recognition of the DOCA and the DOCA Claims Process from the U.S.

Bankruptcy Court for the District of Connecticut, which entered an order on February 14, 2019, docketed in this case, recognizing the "Deed of Company Administration" and "Claims Process" as "binding and enforceable in the United States by Maritimo [Pty Ltd] against its creditors." Doc. #166. The Dubois-Flors did not object to the substance of this order in the Bankruptcy Court.[2]

With both Australian and U.S. bankruptcy proceedings concluded, the stay in this Court was lifted, and this litigation resumed in March 2019. A month later, the Fairbanks defendants moved to dismiss the case on the grounds that the Dubois-Flors were refusing to participate in discovery. Doc. #167. Maritimo Australia also moved to dismiss, arguing in part that the action was precluded by the Bankruptcy Court's order. Doc. #170.

I convened a hearing on the Fairbanks defendants' motion, Doc. #167, and ultimately dismissed Richard and Sheila Dubois from the case for failing to prosecute the action, but denied the motion to dismiss Flors. Doc. #171. Instead, I sanctioned Flors for his willful failure to respond to the defendants' deposition notices by rendering him liable for the Fairbanks defendants' attorney's fees incurred in preparing and serving the deposition notices, preparing their motion to dismiss, and in attending the hearing on the motion. *Id*. The Fairbanks defendants duly moved for attorney's fees, a motion that remains pending. Doc. #178. Flors has subsequently actively litigated this action, objecting to Fairbanks' fee request and Maritimo Australia's motion to dismiss, Doc. #170.

---

[2] *See also* Objection of Michael Flors, Richard Dubois and Sheila Dubois To Motion of Maritimo Offshore Pty. Ltd., By Andrew Cummins Its Agent and Foreign Representative, Seeking Relief (1) under 11 U.S.C. §§ 105(a), 1507 and 1521(a) for an Order Enforcing and Giving Full Force and Effect to the Deed of Company Arrangement, and The Adjudication of the Claims of U.S. Creditors by the Deed Administrators and (2) under 11 U.S.C. § 350 to Close the Case, *In Re Maritimo Offshore Pty Ltd*, No. 16-bk-31613, Doc. #89 (Bankr. D. Conn.) (objecting only to the "singl[ing] out" of the Dubois in certain decretal paragraphs, but twice stating that the Australian voluntary administration proceeding's "rejection of the Dubois claims [is an] undeniable fact[]").

After Richard and Sheila Dubois were dismissed as plaintiffs, the Court determined that Flors may lack standing to press the lawsuit alone, and issued an order to show cause asking Flors to show why he has standing to maintain this action (Doc. #181). All parties still in the case filed responses to that motion.

DISCUSSION

I will first address whether Flors has standing to maintain this action. Then I will turn to consideration of the pending motions to dismiss before addressing the motion for attorney's fees against Flors. Initially, I note that although plaintiffs asserted in their complaint that some or all of these claims fall into the Court's admiralty jurisdiction and are thus governed by admiralty law, Doc. #73 at ¶ 13, all parties have proceeded under the assumption that Connecticut law, and not maritime law, governs this case. I will accordingly apply Connecticut law to the pending motions and orders before me.

### A. Standing

On May 20, 2019, the Court ordered Flors, as the sole remaining plaintiff, to show cause why the complaint should not be dismissed for lack of standing. Doc. #181. As the Court explained in its order, Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. For a federal court to have subject matter jurisdiction over a case, a plaintiff must show that he has "standing"—that is, an injury in fact that was caused by the defendant and for which a court has authority to furnish relief. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). A federal court is obliged to assure itself that a plaintiff has standing and must dismiss a complaint if at any time it determines that the plaintiff cannot carry his burden to prove standing. *See Frank v. Gaos*, 139 S.

Ct. 1041, 1046 (2019); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); Fed. R. Civ. P. 12(h)(3).

In response to the Court's order to show cause, Flors argues that he suffered injury because he owns 50% of Capital Cable Construction LLC, which bought the *Game Changer* originally, and that he owns 100% of Musclelab LLC, which paid for the boat after it was purchased. But the law is clear that a plaintiff may not claim standing in his own right based on the harms visited solely upon a corporate entity that he owns or controls. *See Ali v. New York City Envtl. Control Bd.*, 670 F. App'x 26, 27 (2d Cir. 2016); *Bingham v. Zolt*, 66 F.3d 553, 561–62 (2d Cir. 1995).[3]

Notwithstanding that Flors lacks standing on the basis of his ownership interests in the LLCs, the allegations of the complaint and the parties' factual submissions are sufficient to establish at this initial pleading stage that Flors has acquired a partial ownership interest in the boat since the initial purchase. The complaint refers to the boat as being owned by all three of the then-plaintiffs. Doc. #73 at ¶ 2. And Richard and Sheila Dubois have written a letter to the Court explaining that "we have a verbal agreement that Michael Flors now currently owns 100% equity interest in [the *Game Changer*]. Initially our positions were 1/3 ownership each and due to the partial sinking, which has led to the current litigation, Michael Flors is the most familiar and financially most invested into the above boat and best to prosecute the above pending litigation." Doc. #182-3 at 133. This letter as well as the deposition testimony of Flors, in which he asserts a current 100% equitable interest in the boat (Doc. #186-1 at 3), is sufficient at this pleading stage

---

[3] I do not understand Flors to allege that he has been specifically assigned any ownership rights in any claims by the LLCs or by Richard and Sheila Dubois. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000); *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 418 (2d Cir. 2015).

to show that he has an ownership interest that has been adversely affected by defendants' actions. *See Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (noting that at pleading stage plaintiff need only "clearly … allege facts demonstrating that he is the proper party to invoke judicial resolution of this dispute").

Maritimo Australia argues that Richard and Sheila Dubois represented to the bank that financed the initial boat transaction and the boat's insurer that they were the only owners of the boat. Doc. #186 at 6. But the Dubois never represented that Flors was *not* the holder of an equitable interest in the boat, either after the November 2013 financing note was signed, Doc. #186-3, or when Musclelab LLC paid off the boat, Doc. #182, or when the Dubois vested Flors with a 100% equitable interest in the *Game Changer*, Doc. #182-3 at 133. And even if Richard and Sheila Dubois' failure to disclose an "equitable owner" to insurers, lenders, or boat surveyors, has the effect of implicating them in fraud or some other civil or criminal wrong, as Maritimo Australia claims, Doc. #186 at 6, the Dubois' representations to third parties cannot serve to estop Flors from claiming at the pleading stage that he partially owns the boat.[4] Maritimo's argument that Flors is prevented from claiming ownership of the boat by judicial estoppel also fails, as there has been no showing that Flors disclaimed his equitable interest in the boat either before this Court or before any other court. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

---

[4] Maritimo Australia's best argument concerning representations made by the Dubois is based on a November 2013 loan agreement between Tommack Inc. and Richard and Sheila Dubois where the Dubois promised Tommack that its claim on the boat "is ahead of the claims of any other creditor" and that the boat "has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure." Doc. #186-3 at 3. But Flors' equitable interest, he explained in his deposition, is not ahead of Tommack's claims; it is "the value after the [Tommack] note." Doc. #186-1 at 5. The Tommack-Dubois loan agreement is not inconsistent with Flors' claims about owning an equitable interest in the boat.

Furthermore, Flors himself is personally named on the various bills incurred for the repairs he alleges that defendants' wrongful acts forced him to make, which he also paid. *See, e.g.*, Doc. #182-4 at 4-5 (billed to Flors, Richard and Sheila Dubois as individuals); *id.* at 8-15 (various bills addressed to Flors alone, personally). These invoices, with Flors' handwritten notations of payment, appear to be quite separate from the payments made by Musclelab LLC in exchange for Flors' 100% equitable interest in the vessel. Particularly probative of Flors' injury in fact is at least one charge, in the amount of $6,625.00, for repairs on the boat that Flors paid with what appears to be his own credit card, Doc. #182-4 at 12.

Maritimo Australia and Fairbanks provide no explanation for these documents showing Flors personally paid for boat repairs, but it seems that Flors' explanation for these payments is at least a plausible one: he owned the boat in part, so he paid for at least his part of the repair bills. Likewise, Flors' statement, under oath, that he personally paid for the deposit on the boat, Doc. #186-1 at 3, and that he traded defendants another boat that he (at least partially) owned, the *Sea Ray*, for a $250,000 discount on the *Game Changer*, *id.*, is consistent with his explanation that he acquired a subordinate equitable interest in the vessel. Injury to that ownership interest suffices for standing. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016); *see also LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (injury in fact "need not be large, an identifiable trifle will suffice" to show standing).

Even if Flors were not a part-owner of the *Game Changer*, it is undisputed that he had an arrangement with Richard and Sheila Dubois to use and enjoy the vessel, which he could not do because of the alleged wrongdoing by defendants. For sure, deprivation of the pleasures of boating season in Connecticut is not the most severe harm ever pled in this Court, but it suffices for federal standing. *See, e.g.*, *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083,

1093 (9th Cir. 2017) (recognizing as sufficient for injury-in-fact diminishment of the "recreational, aesthetic, and spiritual" uses and enjoyment of "the waters of San Francisco Bay adjacent to Alameda County and Central San Francisco Bay"); *Nat. Res. Def. Council, Inc. v. F.A.A.*, 564 F.3d 549, 555 (2d Cir. 2009) (same, for use and enjoyment of public wetlands); *Pestey v. Cushman*, 259 Conn. 345, 360 (2002) (recognizing deprivation of use and enjoyment of property as an actionable legal harm); *cf. Andross v. Town of W. Hartford*, 285 Conn. 309, 337 (2008) (although reserving the question of whether harms to purely aesthetic interests qualify for standing, citing with approval over 50 years of U.S. Supreme Courts holding that they do).[5]

Still, "[s]tanding is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester*, 137 S. Ct. at 1650 (cleaned up). Accordingly, I next consider whether Flors has plausibly alleged facts to establish standing for each of the claims he alleges. My analysis at this point considers solely whether Flors has adequately alleged facts to support standing for the type of claim he asserts, rather than whether he has otherwise properly alleged his causes of actions or alleged facts to state plausible grounds for relief.

### 1. Breach of contract (Count 1)

As to the breach of contract claim, Flors himself was not a named party to any of the documents that purport to be boat sales contracts—the only contracts he claims were breached. Under the law of Connecticut, Flors has no standing for his breach of contract claim because he

---

[5] *Sea also* Doug Logan, BOAT SENSE: LESSONS AND YARNS FROM A MARINE WRITER'S LIFE AFLOAT 26-30 (2019, Seapoint Books + Media LLC) (extolling the joys of boating in the Long Island Sound); David "Andy" Samberg, et al, *I'm on a Boat, on* INCREDIBAD (Universal Republic 2009) (discoursing on the use and enjoyment of boats of a similar class to the *Game Changer* without respect to location); HERMAN MELVILLE, MOBY DICK 7 (1892, Norton Ed.) ("Whenever it is a damp, drizzly November in my soul . . . then, I account it high time to get to sea as soon as I can . . . There is nothing surprising in this. If they but knew it, almost all men in their degree, some time or other, cherish very nearly the same feelings towards the ocean with me").

is not a party to any contract for the boat's purchase. *See Tomlinson v. Board of Education of City of Bristol*, 226 Conn. 704, 718 (1993) ("It is well settled that one who is neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract") (internal quotations and bracketing omitted); *cf. Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (applying New York law). As discussed above, Flors cannot claim standing solely for injuries to Capital Cable Construction LLC, even though he co-owns that LLC. *See Channing Real Estate, LLC v. Gates*, 326 Conn. 123, 138 (Conn. 2017). Nor has Flors plausibly alleged that the contracting parties mutually intended him to be a third-party beneficiary who could enforce the contract's terms. *See Grigerik v. Sharpe*, 247 Conn. 293, 308-18 (Conn. 1998). Accordingly, I conclude that Flors lacks standing to bring a claim for breach of the contracts cited in the complaint.

### 2. Misrepresentation (Count 2)

Flors' second claim involves alleged misrepresentations made by Edwin Fairbanks in February and April 2014 about the quality, quantity, and existence of repairs Fairbanks was conducting on the ship. Doc. #73 at ¶¶ 84-91. Flors claims that he detrimentally relied on Fairbanks' misrepresentations, with the result that Flors could not use the boat, was forced to make additional repairs to the boat himself, and missed the boat's spring launch. Doc. #73 at ¶¶ 84-91. These allegations are sufficient at the pleading stage to show an injury-in-fact for standing purposes, especially considering Flors' allegations that he acquired a post-sale ownership interest in the boat as well as his loss of use of the boat. *See, e.g.*, *Natural Resources Defense Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 84-85 (2d Cir. 2013).

### 3. Negligent Misrepresentation (Count 3)

Flors alleges that the Maritimo defendants negligently misrepresented that Edwin Fairbanks was "an agent and representative of Defendant Maritimo Offshore Pty Ltd, authorized and known by [Maritimo Australia] to perform expert and workmanlike storage, preparation, repair, service, and warranty work." Doc. #73 at ¶ 94. It is plausible to conclude that this misrepresentation was made to Flors and that this misrepresentation personally harmed him because, absent the misrepresentation, the boat would have been upgraded and repaired much more rapidly and to the detriment of his lost time and his equitable interest in the boat. He therefore has standing to pursue this claim. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012); *see also Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 98 (2019).

### 4. Breach of Warranties and Magnuson-Moss Act (Counts 4 and 7)

Flors alleges that the defendants violated express and implied warranties under state law as well as the Magnuson-Moss Act. Flors has no standing to maintain his common law warranty claims under Connecticut law because there is no contractual privity between him and any of defendants. *See Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 507 (D. Conn. 2015) (noting that "[u]nder Connecticut common law, privity is required to establish a claim for breach of express warranty"); *Ossolinski v. Ford Motor Co.*, 2014 WL 4638171, at *10 (Conn. Super. Ct. 2014) (noting that "an action for breach of implied warranty which is not brought as a tort action requires that there be privity of contract between the plaintiff and the seller"). The same holds true for Flors' implied warranty claim under the Magnuson-Moss Act, because the Act simply adopts the default state law rule for implied warranty actions and does not broaden

the basis for an implied warranty action beyond that allowed by state law. *See Abraham v. Volkswagen of Am., Inc*., 795 F.2d 238, 248-49 (2d Cir. 1986).

By contrast, Flors does have standing to assert express warranty claims under the Magnuson-Moss Act, because the Act allows for an action for breach of an express warranty to be brought by any "consumer"—a term that is defined by reference to not only the initial buyer but any subsequent transferee during the warranty period (15 U.S.C. §§ 2301, 2310)—and applies on its own terms to express (but not implied) warranties, 15 U.S.C. § 2301(6). Under the Act, "with regard to written warranties, full or limited, privity is not required and transferees of the original purchaser may enforce them during their effective period." *Abraham*, 795 F.2d at 248. Because Flors has alleged his post-sale acquisition of an equitable interest in the boat, he has alleged facts to plausibly establish standing to maintain a claim under the Magnuson-Moss Act for breach of express warranty.

### 5. Negligence (Counts 5 and 6)

Flors alleges that Fairbanks negligently performed the upgrades or repairs to the *Game Changer* such that, in addition to inflicting damage to the boat on their own, Fairbanks cut critical hoses (or negligently allowed the hoses to be cut by others), leading to further damage to the boat. Doc. #73 at ¶¶ 117-120. Flors further alleges that the Maritimo defendants breached their duty of reasonable care with respect to the original design and construction of the boat, Doc. #73 at ¶ 126(a)-(b), and with respect to the repairs executed by Flors, *id*. at ¶ 126(c), (d). Because Flors has adequately alleged his equitable interest in the boat and the loss of his time due to efforts to have the boat repaired, he has alleged sufficient facts to show injury at the pleading stage to establish his standing to maintain a negligence claim.

### 6. CUTPA (Count 8)

Flors alleges the defendants engaged in unfair trade practices by means of their fraud and deception with respect to preparing the boat, damaging the boat, and then refusing to repair it. Doc. #73 at ¶¶ 137-138. CUTPA provides that "any person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of a[n unfair trade practice] may bring an action . . . to recover actual damages." Conn. Gen. Stat. § 42-110g(a). A CUTPA action does not require a plaintiff to prove contractual privity or a similar direct commercial relationship with the defendant. *See Soto*, 331 Conn. at 88-90. Accordingly Flors has adequately alleged facts for pleading purposes to suggest that he sustained an ascertainable loss in the form of a detriment to his ownership interest in the boat and the loss of his time, he has also adequately alleged facts to support standing to maintain his CUTPA claim.

In sum, I conclude that Flors has standing to maintain only some of his claims. I will dismiss his claim under Count One for breach of contract and under Counts Four and Seven for state common law breach of express warranty, state common law breach of implied warranty, and Magnus-Moss breach of implied warranty, without prejudice. *See Carter*, 822 F.3d at 54 (dismissals for lack of standing must be without prejudice). On the other hand, I conclude that he has plausibly alleged facts to establish standing as to his claims for fraud (Count Two), negligent misrepresentation (Count Three), breach of express warranty under the Magnuson-Moss Act (Count Four), negligence (Counts Five and Six), and CUTPA (Count Eight).

### B.  Maritimo Australia's motion to dismiss (Doc. #170)

Maritimo Australia moves to dismiss on the ground that Flors' action against Maritimo Australia is precluded by the order of February 14, 2019, of the U.S. Bankruptcy Court for the District of Connecticut. *See* Doc. #170-1 at 11-13 (order). As noted above, this order arose in the

context of Chapter 15 proceedings enforcing Australian bankruptcy proceedings (referred to as "Deed of Company Administration" or "DOCA" proceedings) involving Maritimo Australia. The Bankruptcy Court's order states in relevant part that the claims process for Maritimo Australia's DOCA is "recognized, enforced, given full force and effect, and is binding and enforceable in the United States by Maritimo against its Creditors," Doc. #170-1 at ¶ 2, and that the "Claims Process is recognized and given full force and effect, and is binding and enforceable in the United States by Maritimo against its Creditors." *Id.* at ¶ 3.

By reference to the Bankruptcy Court's docket, the Court has reviewed the DOCA filed in Maritimo Australia's Chapter 15 proceeding. *In Re Maritimo Offshore Pty Ltd*, No. 16-bk-31613, Doc. #82-2 (Bankr. D. Conn.) ("Bankr. Doc. #82-2"). The DOCA provides that Participating Creditors, being "all creditors of the Company who had a Claim as at Relevant date, whether at law, in equity, whether present, prospective or contingent, whether liquidated or sounding in damages and whether in contract, in tort, or howsoever arising," Bankr. Doc. #82-2 at 5, "must accept their rights and entitlements specified in this deed in full and final satisfaction of all Claims which they have or claim to have against the Company." *Id*. at 16. It further provides that "all Claims by Participating Creditors are released in full and extinguished and this deed may be pleaded and tendered against any Participating Creditor in bar of its Claim." *Id*. at 16.

Flors does not contest that he had notice of the Australian proceedings; indeed, he extensively participated in those proceedings through counsel. Doc. #180-3 at 5-6. In the U.S. Chapter 15 proceedings, his counsel did not object to the entry of the order of February 14, 2019, provided that it was without prejudice to the right of Flors to pursue an action against the Fairbanks defendants, Docs. #180-1 at 5 and #180-2 at 6. I conclude that Flors is precluded from

proceeding with his claims against Maritimo Australia before this Court. Although Flors argues that he wishes to seek reconsideration of the Bankruptcy Court's order, he does not show that he has done so or that any such motion for reconsideration at this late date would be timely under the Bankruptcy Court rules. Accordingly, I will grant the motion to dismiss this action against Maritimo Australia on the ground that this action against Maritimo is precluded by the Bankruptcy Court's order.

### C. Fairbanks' motion to dismiss Flors' claims (Doc. #102)

The Fairbanks defendants move to dismiss Flors' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). For those claims against Fairbanks that I have not already dismissed above due to Flors' lack of standing, I will consider the Fairbanks defendants' arguments.

As to the misrepresentation and CUTPA claims (Claims Two and Eight), Fairbanks alleges that the complaint does not plead fraud with enough particularity. *See* Fed. R. Civ. P. 9(b); *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 119 (2d Cir.2013); *Suez Equity Investors, L.P. v. TD Bank*, 250 F.3d 87, 95 (2d Cir. 2001). Under Rule 9(b), a complaint must "specify the statements [plaintiff] claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Lundy,* 711 F.3d at 119 (cleaned up); *see also Suez Equity Investors, L.P.,* 250 F.3d at 95. Though a plaintiff may generally plead the requisite fraudulent intent, he must allege supporting facts that give rise to a

"'strong inference' of fraudulent intent," which may include "either (a) ... facts ... show[ing] that defendants had both motive and opportunity to commit fraud, or (b) ... facts ... constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness." *Suez Equity Investors, L.P.,* 250 F.3d at 99–100.

The complaint alleges two allegedly untrue statements by the Fairbanks defendants. First, it alleges that "[o]n or about February 16, 2014 Defendant Edwin Fairbanks falsely represented to the Plaintiffs as a statement of fact that he had ordered equipment described in the purchase and sale agreement to install on the Vessel." Doc. #73 at 18 (¶ 84). Second, it alleges that "[o]n or about April 9, 2014, Defendant Edwin Fairbanks falsely represented to the Plaintiffs as a statement of fact that the bottom of the hull was painted property and that the failure to install the equipment and components was not his fault but the fault of Defendant Maritimo [Australia] for failure to supply the equipment." *Ibid.* (¶ 88). I conclude that that these allegations—coupled with the surrounding factual allegations concerning the parties' course of dealing, which suggests a financial motive for Fairbanks to misrepresent the facts—are sufficient to allege fraud with particularity.

As to the misrepresentation claim (Count Two), the Fairbanks defendants further argue that the complaint does not adequately allege facts to support the element of reliance. I do not agree. The complaint alleges detailed facts to suggest that the alleged misrepresentations resulted in a delayed launch and deprivation of Flors' use of the boat. These allegations are enough to satisfy the reliance standard. *See Sturm v. Harb Dev., LLC*, 298 Conn. 124, 142 (2010); *see also Smith v. Mitlof*, 198 F. Supp. 2d 492, 502 (S.D.N.Y. 2002).

As to all counts, the Fairbanks defendants argue that Edwin Fairbanks cannot be sued personally because the complaint does not allege facts sufficient to pierce the corporate veil

between him and FYG. But Fairbanks' corporate officer status does not necessarily insulate him from the remaining tort claims of fraudulent misrepresentation and negligence. In Connecticut, "a director or officer who commits [a] tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 132, 137 (2010). For present pleading purposes, the complaint adequately alleges facts involving Fairbanks' personal involvement, and it is premature to conclude that FYG alone is liable for Fairbanks' actions.

The Fairbanks defendants further argue that they cannot be liable for breach of any warranty of workmanlike performance as alleged in Count Seven. As discussed above, I have already concluded that Flors has no standing to maintain a breach of warranty claim except for a breach of express warranty claim pursuant to the Magnuson-Moss Act against the Maritimo defendants only. In any event, the complaint does not allege any express warranty by either of the Fairbanks defendants; indeed, the alleged contracts to which Fairbanks or FYG were parties disclaim any such warranty. Doc. #73-1 at 7 (¶ 6). Accordingly, I will dismiss Flors' breach of workmanlike performance warranty claim under Count Seven against the Fairbanks defendants.

In short, I will grant in part and deny in part the Fairbanks defendants' motion to dismiss in light of my ruling above concerning claims for which Flors lacks standing. I will grant Fairbanks' motion to dismiss as to the breach of express workmanlike warranty claim alleged in Count Seven. I will otherwise deny the motion to dismiss by the Fairbanks defendants as to the misrepresentation claim alleged in Count Two (alleged against Edwin Fairbanks only), the negligence claim alleged in Count Five (alleged against Edwin Fairbanks only), and the CUTPA claim alleged in Count Eight (alleged against both Fairbanks defendants).

### D. *Maritimo Australia's motion to dismiss Fairbanks' cross-claims (Doc. #95)*

Although Maritimo Australia has filed a motion to dismiss Fairbanks' cross-claims,

Maritimo Australia has subsequently filed a stipulation of dismissal of its cross-claims. Doc.

#170-2. In light of this stipulation of dismissal, I will dismiss the cross-claims without prejudice

and deny Maritimo Australia's motion to dismiss the cross claims as moot.

### E. *Fairbanks Defendants' Motion for Sanctions*

On April 11, 2019, I issued the following order:

> "The Court . . . SANCTIONS Flors for his willful failure to respond
> to defendants' deposition notices. *See* Fed. R. Civ. P. 37(d). Flors
> will be liable for the cost of the Fairbanks defendants' attorney's fees
> incurred in preparing and serving the deposition notices, preparing
> their motion to dismiss (Doc. # 167 ), and in attending the hearing
> on the motion. The Fairbanks defendants shall file any statement
> with verified calculation of applicable fees on or before April 25,
> 2019, and Flors may file any objection to the statement on or before
> May 2, 2019."

Doc. #171. The Fairbanks defendants have moved for $3,207.10 in fees. Doc. #178.

When a party refuses to participate in discovery, Federal Rule of Civil Procedure 37(d)

permits the Court to "require the party failing the act . . . to pay the reasonable expenses,

including attorneys' fees, caused by the failure, unless the failure was substantially justified or

other circumstances make an award of expenses unjust." Flors does not contest that he failed to

participate in good faith in discovery or his failure to do so caused the Fairbanks defendants

additional expense, and he does not argue that he was substantially justified in refusing to

participate in discovery. Flors' only objection is to the reasonableness of the amount of the

requested attorneys' fees.

In calculating attorney's fees, the district court must first determine the "lodestar—the

product of a reasonable hourly rate and the reasonable number of hours required by the case—

[which] creates a presumptively reasonable fee." *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted). The Fairbanks defendants seek recovery of the fees charged by two of their attorneys, Jonathan Kaplan and Eliot Gersten. Attorney Kaplan has a usual hourly rate of $395.00 and Attorney Gersten has a usual hourly rate of $510.00, but both agreed to represent Fairbanks for $350.00 per hour and have sought recovery only at that rate. I find a rate of $350 per hour reasonable in light of the market and the attorneys' relevant experience, as well as the complexity of this case. *See, e.g.*, *Humphrey v. Crea*, 2019 WL 3561899, at *4 (D. Conn. 2019) (approving $300 and $400 per hour rates).

I have independently reviewed the submitted billing records and find the requested items reasonable and non-duplicative. Flors argues that certain items billed by Attorney Gersten, the supervising attorney, are duplicative of items billed by Attorney Kaplan, but it seems to me the antithesis of duplicative billing for a senior attorney to follow up with, and check over, the work of a more junior colleague. I am convinced by the attorneys' submissions that the hours they spent on the case are not duplicative and were otherwise reasonable in relation to the needs of the case. Accordingly, Flors shall pay to counsel for the Fairbanks defendants the sum of $3,207.10 within 21 days from the issuance of this ruling. Failure to do so may result in the dismissal of this action unless Flors promptly moves for an extension of time and submits a sworn financial affidavit demonstrating his inability to pay.

## CONCLUSION

For the foregoing reasons, the Court enters the following orders.

1. The Court DISMISSES the following counts of the complaint without prejudice for lack of standing: Count One (breach of contract) in its entirety and Counts Four and Seven (breach of warranty) to the extent that these counts allege state law claims for breach of

express or implied warranty and to the extent that these counts allege a claim for implied warranty under the Magnuson-Moss Act.

2. The Court GRANTS the motion to dismiss of defendant Maritimo Australia (Doc. #170) on the ground that this action by Flors is precluded by prior order of the Bankruptcy Court of the District of Connecticut. All claims against defendant Maritimo Australia are dismissed.

3. The Court GRANTS in part and DENIES in part the motion to dismiss of the Fairbanks defendants (Doc. #102). To the extent that plaintiff Flors has standing to maintain any warranty claim, the Court GRANTS the motion as to any breach of express warranty claim alleged in Count Seven. The Court otherwise DENIES the motion as to the misrepresentation claim alleged in Count Two (alleged against Edwin Fairbanks only), the negligence claim alleged in Count Five (alleged against Edwin Fairbanks only), and the CUTPA claim alleged in Count Eight (alleged against both Fairbanks defendants).

4. The Court DENIES as moot the motion of defendant Maritimo Australia to dismiss the cross-claims by the Fairbanks defendants (Doc. #95) in light of these parties' stipulation of dismissal of these claims without prejudice.

5. The Court GRANTS the Fairbanks defendants' motion for attorneys' fees (Doc. #178) in the amount of $3,207.10 to be paid to the Fairbanks defendants' counsel by plaintiff Flors no later than **October 17, 2019**.

It is so ordered.

Dated at New Haven this 26th day of September 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge